Jones, J.
On September 30, 1920, a schedule for increased rates for telephone service was filed with the public utilities commission, to become effective November 1,1920. Before the last-named date, protests were duly filed against the proposed increase. The commission suspended the schedule and postponed its operation, which order was itself suspended by the utility giving a bond for the repayment to telephone users of such portion of the increased rates collected as might thereafter be found *267 to be unreasonable and excessive. Thereupon the commission proceeded with the hearing, with a view to determining the reasonableness of the proposed rate increase.
It appears that in a former proceeding, No. 2097, the commission had found and determined the value of the property of the utility. On March 1, 1922, having such valuation in view, the commission made the following finding:
“This day, after full hearing, due notice of the time and place of which was given pursuant to law, and argument by counsel, this matter came on for final consideration, and the Commission, being fully advised in the premises, and taking into consideration the value, as legally found and determined by this Commission in proceeding No. 2097 (reproductive $196,564.98; present $157,575.82, as of September thirtieth, 1920), of respondent’s property used and useful for the convenience of the public in the furnishing of service in the Xenia, Ohio, service area, and estimating its operating revenue for a period of one year, based upon the experience for the nine months ended September thirtieth, 1921 (when said suspended schedule of rates and charges was being collected under bond, as aforesaid), at the sum of $67,354.27, its operating expenses, including local, but not federal, income, taxes, for the same period, upon the same basis, at the sum of $43,046.52, and allowing an appropriation for the depreciation reserve from the net income on the basis of five percentum of the aforesaid reproductive value of said property, or the sum of $10,331.86, the Commission finds that the net earnings available for interest and dividends ex *268 ceeds a reasonable rate upon the aforesaid present value of respondent’s said property, and that, therefore, the said schedule of rates, charges, rentals and tolls providing such excessive return is unjust, unreasonable, excessive and unlawful. The Commission again taking into consideration the aforesaid valuation of respondent’s said property, and estimating its operating revenue for a period of one year, based upon the application of the rates, charges, tolls and rentals set forth in respondent’s schedule, ‘P.U.C.O.No.7,’ sought to be superseded by the schedule herein suspended and under investigation, to respondent’s actual experience for said nine months ended September thirtieth, 1921, at the sum of $62,032.27, its operating expenses for the same period, upon the same basis, at the sum of $42,743.-17, and allowing the aforesaid depreciation charge, finds that the net earnings available for interest and dividends afford a reasonable rate upon the aforesaid present value of respondent’s said property, and that, therefore, the said schedule of rates, charges, rentals and tolls providing such reasonable return is just, reasonable and lawful.”
Thereupon the commission ordered the utility to cease charging or collecting the scheduled rates, except as indicated in its order, and directed a refund of the difference between the rates collected since November 1, 1920, and the rates which the commission found on March 1, 1922, to be just and reasonable.
It appears from the record that the federal income tax was not deducted by the commission as part of the utility’s operating expenses, or made a charge *269 upon its revenue in arriving at the “net earnings available for interest and dividends.”
Under the testimony presented, reinforced by the actual experience of operation for the nine months ending September 30, 1921, we do not find the rates approved unreasonable, in fact; if the commission had not excluded the amount of federal income tax. Neither do we find, in fact, that the commission erred in not approving the schedule of proposed rates filed by the utility. Our main concern here is the legal question presented, whether the federal income tax should be deducted from the gross income, in order to determine the net amount available as a return upon the investment. The value of the property found by the commission was $157,575.82. The net return after all deductions from gross income was $8,957.24, under the existing rate schedule, whereas the net return under the proposed schedule would yield about $13,975.89. Under the proposed schedule a yield of about 8.8% would accrue to the investor. Under the old schedule a rate of only five and seven-tenths percent, would accrue.
In his brief, counsel for the utility states: “If, however, the federal income tax payable by this company shall be allowed by this court as a deduction from gross earnings, the rate of return from the present rates will be but 7.9 per cent.” This court is not a rate-fixing body. Its duty is revisory in ascertaining the lawfulness and reasonableness of the rates fixed by the commission. However, the factors that enter into rate-fixing present a legal question.
Section 614-23, General Code, provides that if after a hearing the commission shall be of the opin *270 ion that the rate is unjust or unreasonable, or if the maximum rates chargeable are insufficient to yield a reasonable compensation for the services rendered, the commission shall fix a just and reasonable rate to be thereafter charged, and substitute the rate so found by it in lieu of the rates charged in the proposed schedule. The inclusion or noninclusion of the federal income tax, however, is a legal question, and must be solved by the application of our public utility law. Counsel for the commission in their brief admit that the federal income tax was disallowed by the commission in adjusting the rates in question. While many factors enter into the reasonableness of a rate, we are reminded that the rights of the public must be conserved, and that the adjustment of rates must be just to both the public and the utility; that the cost of service be made as low to the public as may be consistent with a reasonable yield to the utility for the services rendered. In view of the fact that the utility became responsible for the federal income tax, the 5.7 % yield would seem to be much lower than the return usually allowed to utilities of this character. When it is considered that the federal income tax must be paid out of 5.7%, the conclusion is unavoidable that the net per cent, return is wholly inadequate. The finding of the commission permits the deduction of local taxes, but not the federal income tax. It is difficult to conceive why one is not as much a charge upon the utility, and a burden upon its revenues, as the other. The one enters as much into the company’s cost of service as the other. No authority has been cited by counsel for the commission, in their brief, imposing this particular cost of operation upon the *271 individual investor’s return, except the case of Galveston Electric Co. v. City of Galveston, U. S. Adv. Opinions, 1921-1922, page 382, decided by the United States supreme court on April 10, 1922, a case upon which counsel for the utility also relies. In the course of the opinion in that case, Mr. Justice Brandéis, speaking for the court, said: “The remaining item as to which the master and the court differed relates to the income tax. The company assigns as error that the master allowed, but the court disallowed, as a part of the operating expenses for the year ending June 30, 1920, the sum of $16,254, paid by the company during that year for Federal income taxes. * * * In calculating whether the 5-cent fare will yield a proper return, it is necessary to deduct from gross revenue the expenses and charges; and all taxes which would be payable if a fair return were earned are appropriate deductions. There is no difference in this respect between state and Federal taxes, or between income taxes and others. But the fact that it is the Federal corporate income tax for which deduction is made must be taken into consideration in determining what rate of return shall be deemed fair. For under §216, the stockholder does not include in the income on which the normal federal tax is payable dividends received from the corporation. This tax exemption is therefore, in effect, a part of the return on the investment.”
It is apparent that, in its main feature, the Justice clearly indicated that a federal income tax is a proper deduction from gross revenues in calculating a fair return. Counsel for the commission urge that the last clause of the excerpt quoted qualifies, and, in fact, destroys the explicit language preceding it. *272 We do not think so. The court had before it the question only of a confiscatory rate; the opinion and judgment following should be read in the light of that circumstance. Upon that feature, the inclusion or noninclusion of a federal income tax was incidental and immaterial if the rate was not confiscatory. We are aware that there are cases deciding that such a tax should not be deducted, but we are unable to see why it does not impose as effective a burden upon business as do local taxes. Probably the best considered case upon the subject is Home Telephone & Telegraph Co. v. Public Service Commission, reported in P. U. R. 1922 B, page 479, by the United States district court, where the court approved the master’s report holding the federal income tax to be a proper item of operating expense. In In re Elmira Water, Light & Rd. Co., reported in P. U. R. 1922 D, page 231, decided May 18,1922, the New York commission reviewed the Galveston Electric Co. case, supra, and construed the decision therein as indicating that the federal income tax must be considered in fixing the rate of return, especially if it makes an appreciable difference in such rate. The Idaho Commission in In re Grangeville Electric Light & P. Co., reported in P. U. R. 1922 D, page 513, also reviewed the Galveston case, supra. It frankly avows that it had changed its former views upon the subject. Perforce the Galveston decision, the commission allowed the deduction of the federal income tax as part of 'the operating expenses.
Construing the decision of the United States supreme court as favoring the inclusion of the federal income tax, the order of the commission will be reversed, with instruction to include that tax as part *273 of the expenses of operation, which should be deducted from the gross income in making up a net return available for interest and dividends.

Order reversed.

Marshall, C. J., Hough, Robinson, Matthias and Clark, JJ., concur.
Wanamaker, J., dissents.